## APPEAL OF H. J. KELLY.

Docket No. 1796.   Submitted June 12, 1925.   Decided December 31, 1925.

*Held,* that notes received as part consideration for the sale of stock constituted taxable income in 1919.

*Irvine P. Aten, Esq.,* for the taxpayer.
*A. Calder Mackay, Esq.,* for the Commissioner.

Before GRAUPNER, TRAMMELL, and PHILLIPS.

This appeal involves a deficiency in income tax for 1919 in the amount of $27,484.89. It is based upon the action of the Commissioner in treating the sale of certain stock as a closed transaction instead of as an installment sale, as was done by the taxpayer in his income-tax return, and in the action of the Commissioner in holding that certain of the stock was the property of the taxpayer and not that of another individual in whose name it appeared on the corporation's books.

### FINDINGS OF FACT.

The taxpayer was one of the original incorporators of the Dakota Iron Store, a corporation organized and existing under the laws of South Dakota, with its principal place of business at Sioux Falls. The original paid-in capital stock of the corporation was $25,000, divided into 250 shares of a par value of $100 each. The stock was issued 125 shares to H. J. Kelly, 115 shares to D. S. Reardon, and 10 shares to G. W. Gillispie. The corporation was successful in its operation and made large profits from the date of its organization until 1918. During the years 1910 to 1919 the corporation declared large stock dividends.

On March 1, 1913, Kelly, having received 125 shares as stock dividends, was the owner of 250 shares of the corporation's stock. It had a fair market value on that date of $590.62 per share. On April 30, 1915, he received an additional 125 shares of stock. On February 1, 1917, he received 250 shares of the same stock. On January 8, 1918, he received another 250 shares. On January 8, 1918, he purchased 125 shares at $100 per share, making a total cost of $12,500. On January 14, 1919, he received 250 more shares, making a total of 1,250 shares of stock of the Dakota Iron Store owned by Kelly on the day of the sale in 1919.

Gillispie had received stock dividends so that, in June, 1919, he was the owner of 100 shares of stock of the corporation. Kelly was owner of record of 1,240 shares and Margaret Kelly was owner of record of 10 shares. They belonged, however, to Kelly.

The stock received by Kelly, except that subscribed by him originally, which was owned on March 1, 1913, and except that which he purchased on January 8, 1918, was received as stock dividends.

The stock appearing in the name of Gillispie belonged to Gillispie and was sold by Kelly as his agent. No part of the income from the sale of such stock belonged to Kelly.

On July 21, 1919, Kelly sold his stock to Reardon, and, acting as the agent for Gillispie, included Gillispie's stock in the sale. For the 1,250 shares owned by Kelly he received $55,700 in cash on July 1, 1919; $32,300 in 1920; $54,000 in 1921; $54,000 in 1922, and $54,000 in 1923. The sum of $20,000 in cash was paid to Kelly for Gillispie on account of the sale of the 100 shares owned by Gillispie.

The deferred purchase price was evidenced by promissory notes which were secured by a deposit of the stock as collateral. There was no competent evidence as to the value of the notes received in payment.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 20 days' notice, under Rule 50.

### OPINION.

TRAMMELL: On July 21, 1919, the taxpayer owned 1,250 shares of stock. Of this number, 125 shares of the par value of $12,500, which had been acquired at that price in 1910, had a market value on March 1, 1913, of $590.62 per share. In 1918 he purchased an additional 125 shares at $100 per share. The remaining stock was received by him as stock dividends. The stock owned by the taxpayer was sold in 1919 for a total consideration of $250,000. Since the sale of the stock received as dividends and the stock originally acquired was consummated in one transaction, the entire cost of the stock was represented by the purchase price of that stock which had been purchased.

The Commissioner considered that the 100 shares appearing in the name of Gillispie belonged to Kelly and that the initial payment of $75,700 was in excess of one-fourth of the purchase price of the stock sold. The evidence convinces the Board that the Commissioner was in error in that respect and that Gillispie was the owner of the stock appearing in his name on the books of the corporation. Of the cash received, $20,000 was for Gillispie's stock and should not be included in the gross income of the taxpayer. It thus appears that taxpayer received $55,700 in cash of a total sales price of $250,000, the balance being represented by notes.

It was not shown that the notes received for the property sold were not worth their full face value or that there was not a market therefor. In the absence of such showing the transaction amounted to the receipt of cash and notes which were the equivalent of cash, and as such the transaction was a single closed transaction in the year 1919. The taxpayer received cash and the equivalent of cash for the stock.